# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1428

_____

United States of America

*Plaintiff - Appellee*

v.

Marquis Leval Cotton

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: November 12, 2014
Filed: April 6, 2015

_____

Before MURPHY, MELLOY, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

As Marquis Cotton was attempting to enter an apartment complex, two police officers stopped him and searched him. They found a gun in Cotton's waistband and arrested him for illegally possessing a firearm. Cotton filed a motion to suppress the

evidence, and the district court[1] rejected it. Cotton pleaded guilty to illegally possessing the firearm but reserved his right to appeal the suppression issue. Because the officers conducted a constitutionally permissible seizure, the district court correctly denied Cotton's motion to suppress. We affirm.

I.

On April 30, 2012, Minneapolis Police Officers Kocher and Suchta were patrolling an area around an apartment complex in north Minneapolis. This was a department-approved, off-duty assignment. Both officers, however, were wearing police uniforms.[2] Officer Suchta is an experienced police officer who has patrolled the north Minneapolis area for over eight years. He described the location around the complex as a very violent area that is "plagued with narcotic activity, robberies, [and] shootings." Around 11 a.m., the officers saw an individual throw a set of keys off a third floor balcony to two men, Cotton and an unidentified male, waiting on the ground below.

The property manager previously had instructed residents of the complex not to throw their keys off their balconies to people waiting below. And in mid-April, the property manager sent residents a letter stating "under no circumstances" should residents throw their keys to someone waiting below. The company imposed the restriction because throwing keys to individuals outside of the building compromised the security of the building. Officer Suchta was aware of this security provision when he saw the individual throw the keys from the balcony.

---

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

[2] The management company of the apartment complex paid the police officers to patrol the area surrounding the apartment complex. There is no dispute, however, that the police officers acted as state actors for purposes of the Fourth Amendment.

Immediately after the keys hit the ground, Officer Kocher yelled to Cotton and the unidentified male that they were not allowed to take the keys. The unidentified male ignored the command, grabbed the keys, and walked quickly towards a back door of the complex. As the unidentified male was unlocking the door, Officer Suchta yelled "stop." The unidentified male did not stop. He finished unlocking the door, entered the complex, and pulled the door shut.

Cotton did not move during this interaction. Once the unidentified male was inside the building, Officer Suchta walked quickly towards Cotton, who had a nervous look on his face. According to Officer Suchta, Cotton then reached for his waistband. Because Officer Suchta believed Cotton was reaching for a weapon, he grabbed Cotton's arms and handcuffed him. Officer Kocher performed a pat-down and felt a pistol in Cotton's waistband. Cotton was charged with being a felon in possession of a firearm.

Cotton filed a motion to suppress the evidence of the gun, arguing that the stop was not supported by probable cause or reasonable suspicion. A magistrate judge issued a report and recommendation (R&R), recommending that the district court deny Cotton's motion to suppress. The magistrate judge concluded that Cotton was subject to a Terry stop[3] when Officer Suchta yelled, "stop," but the Terry stop was supported by reasonable suspicion. The magistrate judge considered the totality of the circumstances and concluded:

> (1) Defendant's presence in a high-crime area, (2) the throwing of keys from the third floor to persons outside the building contrary to the property owner's rules, and (3) the unidentified male companion picking up the keys, going quickly to the building, ignoring Officer Suchta's order to stop, opening the door with the keys, and pulling the door shut, there [were] sufficient facts to generate reasonable suspicion.

---

[3] Terry v. Ohio, 392 U.S. 1 (1968).

In addition, the magistrate judge found that the officers conducted a permissible Terry frisk of Cotton after Cotton reached for his waistband.

After both parties filed objections to the R&R, the district court agreed with the magistrate judge's conclusion that the Terry stop was supported by reasonable suspicion.[4] In addition, the district court agreed with the magistrate judge that Officer Suchta feared for his safety and suspected Cotton of being armed and dangerous when Cotton moved for his waistband. Therefore, the district court concluded that the evidence obtained from the Terry frisk was admissible.

Cotton filed a motion to reconsider, arguing the district court erred when it denied the motion to suppress and characterized the unidentified male and Cotton as "companions." The district court denied the motion, finding that the record supported the conclusion that Cotton and the other individual were in close proximity to one another outside the rear door of the apartment building and were both awaiting the resident's keys. The district court also concluded that although Officer Suchta directed the unidentified male to stop, it is reasonable to assume Cotton thought the command applied to him as well because he did not move.

Cotton pleaded guilty to illegally possessing a firearm. He reserved his right to appeal the denial of his motion to suppress, and he timely filed this appeal.

---

[4] The R&R based its reasoning in part on the unidentified male's action after Officer Suchta yelled stop. Because the seizure occurred at the moment Officer Suchta yelled, "stop," however, the district court specifically did not consider the unidentified male's actions after Officer Suchta yelled, "stop."

## II.

Cotton argues the officers lacked reasonable suspicion to justify the stop and eventual frisk. He also contends the district court erred by denying the motion to reconsider.

The Government argues the initial stop did not implicate the Fourth Amendment at all, and even if the initial stop implicated the Fourth Amendment, it was supported by reasonable suspicion. The Government also asserts the district court committed no error in denying the motion to reconsider.

### A. The Initial Stop and Subsequent Search

This Court reviews the facts supporting a district court's denial of a motion to suppress for clear error and reviews its legal conclusions de novo. United States v. Clark, 409 F.3d 1039, 1044 (8th Cir. 2005).

#### i. The Terry stop was supported by reasonable suspicion

Assuming, without deciding, that Cotton was subject to a Terry stop, we agree with the district court that the officers had reasonable suspicion to support a Terry stop. "The principal components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop or search, and then the decision whether these . . . facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." Ornelas v. United States, 517 U.S. 690, 696 (1996). Cotton's presence in an area known for violence and drugs; the unidentified male's failure to comply with the command to not pick up the keys; that man's evasive flight after grabbing the keys (but before Officer Suchta yelled stop); Cotton's location in relation to the other man and the keys; and the violation of the apartment's rules, together, provided reasonable suspicion to justify the Terry stop of Cotton. See United States v. Barker, 437 F.3d 787, 790 (8th Cir. 2006) (finding that

- 5 -

a series of innocent actions, when viewed together, can lead an officer to formulate reasonable suspicion).

Cotton argues that the unidentified male was not his companion. The relevant inquiry is not whether Cotton and the unidentified male were actually companions; rather, it is whether they appeared to be companions from the perspective of a reasonable officer based on the totality of the circumstances. Further, assuming it was a mistake for the officers to assume Cotton and the unidentified individual were companions, an officer's reasonable mistake can still give rise to reasonable suspicion. United States v. Johnson, 326 F.3d 1018, 1022 (8th Cir. 2003) (finding that a reasonable but mistaken belief may justify an investigative stop). Cotton and the unidentified male appeared to be the recipients of the thrown keys based on their location below the balcony. While all of the events leading up to the Terry stop could have an innocuous explanation, the Supreme Court has specifically stated "[e]ven in Terry, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation." Illinois v. Wardlow, 528 U.S. 119, 125 (2000). "Terry accepts the risk that officers may stop innocent people." Id. at 126. Even though Cotton remained still and complied with the direction not to take the keys, the evasive behavior of his apparent companion, when viewed in combination with the apartment's security policy and its location in a violent area, rose to the level of reasonable suspicion that criminal activity was afoot. Therefore, the Terry stop was justified.

ii. The Terry frisk was supported by reasonable suspicion

Cotton next asserts that the officers did not have reasonable suspicion to detain him for a Terry frisk. After Officer Suchta yelled "stop," he walked quickly towards Cotton, who had a nervous look on his face. Officer Suchta testified that as he approached "[Cotton] made a motion with his hands to his front waistband." Officer Suchta's first thought was "[Cotton] is reaching for a weapon." Only then did Officer Suchta grab Cotton's arms and handcuff him.

- 6 -

"A protective frisk is only warranted if specific articulable facts taken together with rational inferences support the reasonable suspicion that a party was potentially armed and dangerous." United States v. Ellis, 501 F.3d 958, 961 (8th Cir. 2007) (internal quotation marks omitted). Based on the events leading up to the Terry frisk, including Cotton's actions as Officer Suchta approached, we find the officers had reasonable suspicion that criminal activity was afoot and that Cotton was potentially armed and dangerous. See United States v. Davis, 202 F.3d 1060, 1063 (8th Cir. 2000) (upholding a protective frisk based, in part, on the defendant's nervous movements and adjustment of his jacket in a high-crime area). This encounter occurred in a violent area, Cotton reached for his waistband as the officers were approaching, and he had a nervous look on his face.[5] Because the officers had reasonable suspicion that Cotton was armed and dangerous, it was proper for the officers to detain Cotton for a limited period of time to conduct the Terry frisk. Therefore, the Terry frisk was justified.

### B. Motion to Reconsider

In the district court, Cotton filed a motion to reconsider the district court's denial of his motion to suppress the evidence. Specifically, Cotton argued the district court erred when it characterized the unidentified male and Cotton as companions. On appeal, Cotton asserts that because the "district court adopted a different and new analysis, one that relied on the unfounded determination that the two men were companions," he did not have a chance to address the companion characterization discussed in the order adopting the R&R.

Cotton's argument is unpersuasive. He had the opportunity to object, and in any event, there was no error in the characterization. The magistrate judge stated in the R&R:

---

[5] A suspect's nervousness is considered in the totality of circumstances analysis. See United States v. Beck, 140 F.3d 1129, 1139 (8th Cir. 1998).

> But, under the totality of the circumstances of this case, (1) Defendant's presence in a high-crime area, (2) the throwing of keys from the third floor to persons outside the building contrary to the property owner's rules, and (3) *the unidentified male companion* picking up the keys, going quickly to the building, ignoring Officer Suchta's command to stop, opening the door with the keys, and pulling the door shut, there are sufficient facts to generate reasonable suspicion.

(emphasis added). This passage explicitly refers to the unidentified male as Cotton's companion. Characterization of the relationship between the two men did not differ between the R&R and the district court's order adopting the R&R. Cotton, therefore, could have objected before the district court adopted the R&R. Furthermore, because Cotton and the unidentified male were standing in the vicinity of each other and awaiting keys to enter the apartment, the record supports the conclusion that a reasonable officer could have viewed Cotton and the unidentified male as companions.

Cotton has made no showing to warrant reconsideration by the district court. As a result, the district court did not err by denying the motion to reconsider.

III.

The judgment of the district court is affirmed.

_____