# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-4275

_____

Levi Wilson, Individually; M W, by and through his next friend Levi Wilson

*Plaintiffs - Appellees*

v.

Scott Lamp, in his individual and official capacity; Iowa, State of

*Defendants - Appellants*

Jessica Dorhout-VanEngen, in her individual and official capacity; John Doe, in his individual and official capacity

*Defendants*

_____

No. 16-4337

_____

Levi Wilson, Individually; M W, by and through his next friend Levi Wilson

*Plaintiffs - Appellees*

v.

Scott Lamp, in his individual and official capacity; Iowa, State of

*Defendants*

Jessica Dorhout-VanEngen, in her individual and official capacity

*Defendant - Appellant*

John Doe, in his individual and official capacity

*Defendant*

_____

Appeals from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: October 19, 2017
Filed: August 28, 2018

_____

Before GRUENDER and BENTON, Circuit Judges, and TUNHEIM[1], District
Judge.

_____

BENTON, Circuit Judge.

Levi S. Wilson and his minor son, M.W., sued two officers for unreasonable search and seizure, and use of excessive force under 42 U.S.C. § 1983. The district court denied the officers' motions for summary judgment. Having jurisdiction under 28 U.S.C. § 1291, this court reverses in part, affirms in part, and remands.

I.

The parties dispute the following facts, which are stated here favorably to the plaintiffs. On September 23, 2014, officers Scott E. Lamp and Jessica Dorhout-

_____

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

-2-

VanEngen were surveilling a park. Based on conversations with Hollie Vlietstra—Levi's ex-girlfriend, and the mother of M.W. and a minor girl—the officers believed a convicted child molester, David C. Wilson, was meeting the minor girl at 8:00 p.m. at the park. David had multiple outstanding warrants. The officers knew that David's brother, Levi, and seven-year-old M.W. were at a Boy Scout meeting and would leave the park around 8:00 p.m. to meet Vlietstra. At about 7:10 p.m., the officers received a call that someone had just driven away without paying for gas. An attendant identified David as the driver of the vehicle, quickly determined to be Levi's. At 7:50 p.m., a pickup truck with a covered bed—which had been parked during the officers' surveillance—left the park. The officers knew it also belonged to Levi. After following the truck for a few minutes, they stopped it. They approached with guns drawn. They told the driver to put his hands up. He complied. Officer Dorhout-VanEngen recognized Levi and called him by name. The officers ordered him out of the truck. He complied. Officer Lamp grabbed Levi and threw him against the truck, with a gun pointed at the back of his head. The officers did a patdown of Levi. They searched the vehicle and left. Throughout the stop, Levi and M.W. had at least one weapon pointed at them. Levi and M.W. now both suffer from and receive treatment for post-traumatic stress disorder.

The officers sought summary judgment, asserting qualified immunity. The district court denied qualified immunity. The officers appeal.

II.

Levi and M.W. argue that this court lacks jurisdiction. They agree that this court may review the denial of qualified immunity if the issue "is a purely legal one: whether the facts alleged . . . support a claim of violation of clearly established law." *See* **Pace v. City of Des Moines**, 201 F.3d 1050, 1052 (8th Cir. 2000), *quoting* **Mitchell v. Forsyth**, 472 U.S. 511, 528 n.9 (1985). However, Levi and M.W. believe that because the issues on appeal are based in fact, this court lacks jurisdiction. *See* **Johnson v. Jones**, 515 U.S. 304, 313 (1995). To the contrary, the officers' arguments

address the legal determinations of the district court based on the facts viewed favorably to Levi and M.W. This court has jurisdiction.

## III.

This court "review[s] the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." ***Chambers v. Pennycook***, 641 F.3d 898, 904 (8th Cir. 2011). The denial of qualified immunity is reviewed de novo. ***Boude v. City of Raymore***, 855 F.3d 930, 933 (8th Cir. 2017). Government actors have qualified immunity as a shield against litigation if their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982). To defeat qualified immunity, the plaintiff has the burden to prove: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." ***Howard v. Kansas City Police Dep't***, 570 F.3d 984, 988 (8th Cir. 2009). *See* ***Pearson v. Callahan***, 555 U.S. 223, 236 (2009) (recognizing the court's discretion in deciding "which of the two prongs of the qualified immunity analysis should be addressed first").

## A. Unreasonable Search and Seizure

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." ***United States v. Arvizu***, 534 U.S. 266, 273 (2002) (citation omitted). "And in determining whether the seizure and search were 'unreasonable,'" this court looks at "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." ***Terry v. Ohio***, 392 U.S. 1, 19-20

(1968).  The search "must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible."  *Id.* at 19, *quoting* **Warden v. Hayden**, 387 U.S. 294, 310 (1967) (Fortas, J., concurring).  The officer must have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" **United States v. Sokolow**, 490 U.S. 1, 7 (1989), *quoting* **Terry**, 392 U.S. at 30.  Reasonable suspicion requires "some minimal level of objective justification." **I.N.S. v. Delgado**, 466 U.S. 210, 216-17 (1984).  A stop made on a 'hunch' is insufficient.  **Terry**, 392 U.S. at 22, 27.  This court looks at the totality of the circumstances in analyzing whether an objective justification existed.  *See* **Arvizu**, 534 U.S. at 273.  "[T]he limitations which the Fourth Amendment places upon a protective seizure and search for weapons . . . will have to be developed in the concrete factual circumstances of individual cases." **Terry**, 392 U.S. at 29.  "Reasonable suspicion is not a 'finely-tuned' or bright-line standard; each case involving a determination of reasonable suspicion must be decided on its own facts." **United States v. Roggeman**, 279 F.3d 573, 578 (8th Cir. 2008), *citing* **Ornelas v United States**, 517 U.S. 690, 696 (1996) *and* **Terry**, 392 U.S. at 29.

## I.

Levi and M.W. argue that the officers lacked reasonable suspicion to stop their truck.  The stop occurred at night, so the officers could not see if David was the driver.  The truck had a tonneau cover, preventing a view of the bed.  Based on the totality of the circumstances, the officers had reasonable suspicion to believe that David, wanted for criminal activity, could be driving or hiding in the truck.  The officers were justified in making the stop.

## ii.

Levi asserts that the officers' patdown was unreasonable.  He believes that the officers did not have a reasonable suspicion that he was armed and dangerous based

on articulable facts. *See **Minnesota v. Dickerson***, 508 U.S. 366, 374 (1993); ***Sokolow***, 490 U.S. at 7.

For reasonable suspicion, the officers point to these articulable facts: David had eight outstanding warrants: one for contempt, six for no-contact order violations, and one for failure to appear. Levi had a pending domestic abuse charge related to throwing Vlietstra to the ground. David had pictures of handguns and rifles on his Facebook page. David was known to have access to Levi's vehicles and might be hiding in Levi's truck. Levi might be helping David hide because: (1) according to Vlietstra, Levi had helped David by passing messages between her minor daughter and him about nudity and illegal drug use, even after Levi found out that David had a sexual relationship with the minor daughter and that there was a no-contact order against him, and (2) Levi previously told a prosecutor: "I'll tell you where David is if you'll give me a plea bargain on the domestic abuse charge."

It is undisputed that a search of David would have been lawful. The officers had warrants for David's arrest, which gave them probable cause to arrest *and* search him. *See, e.g.*, ***Birchfield v. North Dakota***, 136 S. Ct. 2160, 2174 (2016) ("officers carrying out a lawful arrest had the authority to make a warrantless search of the arrestee's person"); ***United States v. Robinson***, 414 U.S. 218, 224, 235 (1973) (finding "search may be made of the person of the arrestee by virtue of the lawful arrest"). Even without these warrants, the officers reasonably believed that David may be armed and dangerous because he had posted pictures of firearms on his Facebook page, which suggests that he had access to weapons.

The question remains whether the officers' search of Levi was also lawful. On these facts, it was. Officers may take an individual's association with a suspect into account in determining whether the individual "might also be armed." *See **United States v. Trogdon***, 789 F.3d 907, 910-11 (8th Cir. 2015). Companionship alone cannot justify a frisk, but it is a fact "to be considered in determining the overall

-6-

reasonableness of the officer's actions." ***United States v. Flett***, 806 F.2d 823, 827 (8th Cir. 1986). *See* ***United States v. Menard***, 95 F.3d 9, 11 (8th Cir. 1996) (finding reasonable a patdown of an individual who is not the main suspect because "an armed associate" of a suspect "might use force to free him"). Officers may pat down an individual associated with a suspect if they are engaged in a "common enterprise" "and have the same interest in concealing the fruits or the evidence of their wrongdoing." ***Wyoming v. Houghton***, 526 U.S. 295, 304-05 (1999). *See* ***Maryland v. Pringle***, 540 U.S. 366, 373 (2003) (finding it "reasonable for the officer to infer a common enterprise among the" passengers of a car); ***United States v. Cowan***, 674 F.3d 947, 954 (8th Cir. 2012) (analogizing presence in an apartment to presence in a car and finding it reasonable for an officer "to infer [the individual] was part of a common enterprise"); ***United States v. Chauncey***, 420 F.3d 864, 871 (8th Cir. 2005) (finding "it was reasonable for the officer to infer a common enterprise" when the officer had "several pieces of evidence tending to suggest that there was a 'common enterprise' between" two individuals).

Whether Levi and David were actually companions is not dispositive. "The relevant inquiry is . . . whether they appeared to be companions from the perspective of a reasonable officer based on the totality of the circumstances." ***United States v. Cotton***, 782 F.3d 392, 395 (8th Cir. 2015). Even if an officer mistakenly believes that individuals are companions, "an officer's reasonable mistake can still give rise to reasonable suspicion." ***Id.*** Based on the totality of the circumstances at the time of the patdown, the officers were reasonable in their suspicion that Levi and David were companions in a "common enterprise."

Because the officers had warrants for David's arrest, reasonably believed that he was armed and dangerous, reasonably believed that he might be hiding in Levi's car with Levi's help, and reasonably believed that Levi and David were engaged in a common enterprise, the officers' search of Levi was lawful. It was reasonable for the officers to pat Levi down before searching the truck, where they believed David

might be hiding, in order to search the truck for David without fear that Levi might use force against them if David was discovered, or to prevent his imminent discovery. *See Menard*, 95 F.3d at 11 (finding an officer is reasonable in conducting a "pat-down" of the companion of a possible drug trafficker as the companion "exited the auto, so that [the officer] could complete his search without fear that [the auto's] occupants would prove to be armed and dangerous should contraband be discovered"); *United States v. Hensley*, 469 U.S. 221, 235 (1985) (finding officers were "authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop" because officers reasonably believed the suspect was armed and dangerous); *Michigan v. Long*, 463 U.S. 1032, 1047 (1983) (when an officer possesses the reasonable belief that a suspect is armed and presently dangerous, "it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm"), *quoting Terry*, 392 U.S. at 24.

Under the circumstances, the pat-down did not violate Levi's Fourth Amendment rights.

iii.

Levi and M.W. believe that reasonable suspicion does not justify the search of the truck because *Terry* is limited to the search of Levi's person. "*Terry* need not be read as restricting the preventative search to the person of the detained suspect." *Id.* The "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger" because "roadside encounters between police and suspects are especially hazardous" and "danger may arise from the possible presence of weapons in the area surrounding a suspect." *Id.* at 1049. An officer acts reasonably in searching areas of a vehicle that are large enough to hide an individual and not readily visible to a person outside the vehicle. *United States*

***v. Jones***, 471 F.3d 868, 874-75 (8th Cir. 2006), *citing **United States v. Thomas***, 249 F.3d 725, 729-30 (8th Cir. 2001). Here, the officers' search was on the roadside, at night. They performed a protective sweep inside the passenger cabin and under the tonneau cover—two places they reasonably believed David, with warrants for his arrest, could be hiding. They did not search spaces where David could not hide. The officers' search was "reasonably related in scope to the circumstances which justified" the stop. *See **Terry***, 392 U.S. at 19-20.

## B. Excessive Use of Force

Levi and M.W. claim that the officers violated their constitutional right under the Fourth Amendment to be free from excessive force. *See **Shannon v. Koehler***, 616 F.3d 855, 859 (8th Cir. 2010); ***Graham v. Connor***, 490 U.S. 386, 394-96 (1989). "The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." ***Mettler v. Whitledge***, 165 F.3d 1197, 1202 (8th Cir. 1999). An officer's use of excessive force violates the Fourth Amendment if "objectively unreasonable." ***Graham***, 490 U.S. at 397. Objective unreasonableness is "judged from the perspective of a reasonable officer on the scene," in light of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." ***Id.*** at 396. Force may be objectively unreasonable when a plaintiff does not resist, lacks an opportunity to comply with requests before force is exercised, or does not pose an immediate safety threat. *See **Smith v. Kansas City, Missouri Police Dep't***, 586 F.3d 576, 581 (8th Cir. 2009). *See generally **Ryan v. Armstrong***, 850 F.3d 419, 427 (8th Cir. 2017), *citing **Kingsley v. Hendrickson***, 135 S. Ct. 2466, 2473 (2015) (noting facts and circumstances potentially relevant to determining excessive force, including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem

at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting"). For officials to lose the benefit of qualified immunity, the law must be clearly established at the time of the incident because "reasonably competent public official[s] should know the law governing [their] conduct." *Harlow*, 457 U.S. at 818-19.

The officers argue that Levi and M.W. have not shown they were injured. *See Grider v. Bowling*, 785 F.3d 1248, 1252 (8th Cir. 2015) (if the suspect does not allege injuries from the officer's acts, then the use of force was not excessive). Levi has been diagnosed, treated, and hospitalized for post-traumatic stress disorder. M.W. now suffers from post-traumatic stress disorder. Post-traumatic stress disorder is a sufficient injury supporting an allegation of excessive use of force. *See Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995).

The officers emphasize that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *See Graham*, 490 U.S. at 396. True, when a suspect repeatedly refuses to comply with officers' reasonable commands, they may reasonably use some force to secure compliance. *See Hollingsworth v. City of St. Ann*, 800 F.3d 985, 988, 990 (8th Cir. 2015). But the officers admit that Levi complied with all commands and did not resist.

The officers stress that because David (1) had just committed a crime, (2) had warrants for his arrest, and (3) had pictures of guns on his Facebook page, they were justified in approaching the truck with weapons drawn. *See Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995) (finding officer's drawing and pointing of weapon not an excessive use of force when the officer reasonably believed suspect committed a felony, fled, and hid from the officer); *United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004) (officers may brandish weapons when confronted with serious danger in the course of investigative stops). The officers' drawing and pointing of weapons

as they approached the truck, which they reasonably believed was being driven by David, was not excessive. But Levi and M.W. say that the officers kept their weapons drawn and pointed at them throughout the incident even after they realized the driver was Levi, not David, the passenger was M.W., a child, and the officers had patted Levi down. *See **Tolan v. Cotton***, 134 S. Ct. 1861, 1863, 1867-68 (2014) (finding that in a § 1983 action for excessive force, where the plaintiff and defendant-officers disagree on facts, credibility determinations are not for the courts to decide; the plaintiff's evidence is to be believed and "all justifiable inferences are to be drawn in his favor"). On the facts here, the continuous drawing and pointing of weapons constitutes excessive-force. *See **Neal v. Ficcadenti***, 895 F.3d 576, 581 (8th Cir. 2018) ("a reasonable officer is not permitted to ignore changing circumstances and information that emerges once arriving on scene"); ***Chambers***, 641 F.3d at 907-08 (finding officer's use of force unreasonable when the individual was restrained and not resisting); ***Ngo v. Storlie***, 495 F.3d 597, 603 (8th Cir. 2007) (finding officer's use of force unreasonable once individual discarded weapons and was not actively resisting).

The officers believe they did not use excessive force because they acted reasonably in light of the circumstances, following standard police protocol. Even so, it does not make the officers' acts reasonable. *See **Smith***, 586 F.3d at 581-82, *quoting **Cole v. Bone***, 993 F.2d 1328, 1334 (8th Cir. 1993) ("under section 1983 the issue is whether the government official violated the Constitution or federal law, not whether he violated the policies of a state agency").

Finally, the officers argue that the law is not clearly established, claiming that this court has not recognized excessive force under similar facts. To the contrary, an officer's "use of force against a suspect who was not threatening and not resisting" is unreasonable. ***Shannon***, 616 F.3d at 864-65. *See, e.g.*, ***Small v. McCrystal***, 708 F.3d 997, 1005 (8th Cir. 2013) (finding use of force excessive toward an individual not fighting or resisting arrest); ***Brown v. City of Golden Valley***, 574 F.3d 491, 499

(8th Cir. 2009) (it is clearly established that force is least justified against those who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public); *Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006) (use of force "gratuitous and completely unnecessary act of violence" when individual is not resisting arrest, poses little or no threat to the safety of officers or others, and committed minor offenses); *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002) (force is excessive when the suspected offense is minor, with no immediate safety threat and no active resistance); *Bauer v. Norris*, 713 F.2d 408, 412 (8th Cir. 1983) (even when an individual is "argumentative, contentious, or vituperative," force is not objectively reasonable); *Feemster v. Dehntjer*, 661 F.2d 87, 89 (8th Cir. 1981) (an officer's use of any force is unreasonable when the individual "quietly submits"). Levi's and M.W.'s right to be free from excessive force was clearly established.

The district court correctly concluded that the officers were not entitled to qualified immunity on the excessive force claim.

\* \* \* \* \* \* \*

The judgment is reversed in part, affirmed in part, and remanded for proceedings consistent with this opinion.

TUNHEIM, District Judge, concurs in the result.

_____