SMITH, Chief Judge, concurring.
 

 I concur in the court's holding that the district court properly granted summary judgment in favor of Deputy Clark, as he lacked "fair notice" of his conduct's unlawfulness.
 
 See
 

 Kisela v. Hughes
 
 , --- U.S. ----,
 
 138 S. Ct. 1148
 
 , 1158,
 
 200 L.Ed.2d 449
 
 (2018) (per curiam) (explaining that qualified immunity protects officers lacking "fair notice" of their conduct's unconstitutionality). I write separately to express my disagreement with the court's
 conclusion that Deputy Clark had reasonable suspicion to stop Gregory after Gregory departed from the rest area. While Deputy Clark may have had reasonable suspicion to stop Gregory at the rest area had Gregory not consented to a search, that reasonable suspicion did not extend beyond that interaction.
 

 "A seizure may be accomplished either by physical restraint or by sufficient show of authority. The
 
 Terry
 
 seizure requirement is fulfilled when it is apparent from the circumstances that the individual was not free to ignore the officer and proceed on his way."
 
 United States v. Palmer
 
 ,
 
 603 F.2d 1286
 
 , 1288-89 (8th Cir. 1979) (cleaned up).
 

 [I]n determining whether [a] seizure and search were unreasonable, this court looks at whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. The search must be strictly tied to and justified by the circumstances which rendered its initiation permissible.
 

 Wilson v. Lamp
 
 ,
 
 901 F.3d 981
 
 , 986 (8th Cir. 2018) (cleaned up).
 

 The court identifies (1) Deputy Clark knowing that Gregory had a gun and his desire to inspect that gun, (2) Gregory making a U-turn on the highway and, (3) Gregory pulling over and putting his hands out his truck's window as supporting Deputy Clark's reasonable suspicion.
 

 However, Gregory's U-turn and surrender are particularly unsatisfactory bases for reasonable suspicion. By leaving Gregory without instructions to remain and moving to inspect the restrooms, Deputy Clark objectively indicated that the encounter had ended. Gregory left the rest area, reasonably believing his interaction with Deputy Clark had ended. Likewise, after the encounter had ended, Gregory could legitimately avoid further interactions with police.
 
 See
 

 Florida v. Royer
 
 ,
 
 460 U.S. 491
 
 , 498,
 
 103 S.Ct. 1319
 
 ,
 
 75 L.Ed.2d 229
 
 (1983) ;
 
 see also
 

 Illinois v. Wardlow
 
 ,
 
 528 U.S. 119
 
 , 131,
 
 120 S.Ct. 673
 
 ,
 
 145 L.Ed.2d 570
 
 (2000) (Stevens, J., concurring in part and dissenting in part) (explaining that "[f]light to escape police detection ... may have an entirely innocent motivation"). Nevertheless, Deputy Clark followed Gregory for 19 miles-including across an overpass after Gregory made a U-turn. Shortly after making the U-turn, Gregory noticed "police cars all over the area," Appellant's Br. at 12, and observed police cars "positioned" at an exit he was nearing, Mem. & Order at 3,
 
 Gregory Clark v. Austin Clark
 
 , No. 1:16-cv-00094-AGF,
 
 2018 WL 513590
 
 (E.D. Mo. Jan. 23, 2018), ECF No. 62 ;
 
 see also
 
 Gregory Clark Depo. at 138,
 
 Gregory Clark v. Austin Clark
 
 , No. 1:16-cv-00094-AGF (E.D. Mo. Oct. 23, 2017), ECF No. 49-5 (testifying that he pulled over after observing police cars in front of him on the exit overpass while being followed by Deputy Clark). Afraid, and sensing from this "show of authority" that he "was not free to ... proceed on his way,"
 
 Palmer
 
 ,
 
 603 F.2d at 1289
 
 , Gregory eventually stopped at an exit. Many reasonable people traveling between states would be unnerved by having local police follow and surround them on the highway.
 
 See
 

 United States v. Peters
 
 ,
 
 10 F.3d 1517
 
 , 1522 (10th Cir. 1993) (explaining that a nervous reaction to being followed and stared at by an officer after having already been searched and released was insufficient to support finding reasonable suspicion). This does not resemble a typical stop by police for a driving violation. Nervousness in this scenario could easily reflect a cautious consciousness of an imminent confrontation rather than a guilty conscience. Furthermore, "[r]easonable suspicion cannot be manufactured by the police themselves."
 
 United States v. Yousif
 
 ,
 
 308 F.3d 820
 
 , 829 (8th Cir. 2002).
 

 Without Deputy Clark's interaction with Gregory at the rest area, Gregory would have been just another traveler. Therefore, for the stop at the exit to have been reasonable, the circumstances at the rest area must have "justified [Deputy Clark's] interference" with Clark, because a "search must be strictly tied to and justified by the circumstances which rendered its initiation permissible."
 
 See
 

 Wilson
 
 ,
 
 901 F.3d at 986
 
 (internal quotations removed). While I agree that Deputy Clark likely had reasonable suspicion for a stop at the rest area, the question is close. Gregory was present near the crime scene, and, being armed, had had the ability to commit the crime. However, as the court notes, Gregory cooperated with police at the rest area, answering officers' questions and voluntarily providing them with his military identification and concealed carry permit. Furthermore, the caller from the school had not provided a description of the alleged shooter, and Gregory was not engaging in any suspicious activity when approached by Deputy Clark.
 
 C.f.
 

 United States v. Quinn
 
 ,
 
 812 F.3d 694
 
 (8th Cir. 2016) (finding reasonable suspicion where suspect was not only one of the only people in proximity to the crime scene but also matched a description of the perpetrator and acted suspiciously when approached by police). Considering the closeness of the reasonable suspicion question at the rest stop, Deputy Clark's argument that Gregory's behavior on the highway augmented the suspicion he developed at the rest area is weak. Gregory's behavior on the highway was a natural reaction to being followed and surrounded by police, not behavior likely indicative of a guilty conscience or criminal activity. With no relevant additional information to suggest that Gregory had in fact been the shooter at the rest area, Deputy Clark's decision to stop Gregory at the exit after following him for 19 miles was not "reasonably related in scope to the circumstances which justified the interference in the first place," or "strictly tied" to those circumstances.
 
 See
 

 Wilson
 
 ,
 
 901 F.3d at 986
 
 (internal quotations omitted).
 

 Neither does Deputy Clark's desire "to follow up with Gregory about inspecting the gun," justify the stop.
 
 See supra
 
 Part II.B. The Fourth Amendment's protections are not so easily undermined by second thoughts.
 
 See
 

 United States v. Garcia
 
 ,
 
 23 F.3d 1331
 
 , 1335-36 (8th Cir. 1994) (finding officer lacked reasonable suspicion for a second stop where officer released suspects after deciding not to hold them pending the arrival of backup).
 

 Considering the totality of the circumstances, I conclude that Deputy Clark lacked reasonable suspicion for the exit stop and therefore violated Gregory's Fourth Amendment rights.
 

 Nevertheless, that right was not established in a "particularized sense," as of January 2016.
 
 See
 

 Mettler v. Whitledge
 
 ,
 
 165 F.3d 1197
 
 , 1203 (8th Cir. 1999). For the reasons stated by the court in Part II.B. of this opinion, Deputy Clark could have reasonably believed that he had the authority to conduct the stop at the exit. Consequently, the district court properly granted summary judgment in Deputy Clark's favor.