# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1399
_____

Vanessa Cole, As Personal Representative of the Estate of Roy Lee Richards, Jr.,
Deceased other Roy Lee Richards, Jr.

*Plaintiff - Appellee*

v.

Dennis Hutchins, Individually

*Defendant - Appellant*

Kenton Buckner, Individually and Officially; City of Little Rock, A Municipality

*Defendant*s
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: March 11, 2020
Filed: May 28, 2020
_____

Before GRUENDER, ARNOLD, and SHEPHERD, Circuit Judges.
_____

GRUENDER, Circuit Judge.

In the early morning hours of October 25, 2016, Officer Dennis Hutchins shot
and killed Roy Lee Richards, Jr. Representing Richards's estate, Vanessa Cole sued

Officer Hutchins under 42 U.S.C. § 1983, alleging he used excessive force against Richards in violation of the Fourth Amendment. Officer Hutchins moved for summary judgment, claiming qualified immunity. The district court[1] denied this motion, finding that material facts "sharply in dispute" precluded qualified immunity. Officer Hutchins appeals the district court's denial of qualified immunity. Cole has moved to dismiss this appeal for lack of jurisdiction. For the reasons that follow, we deny Cole's motion to dismiss and affirm the district court.

## I.

On the evening of October 24, 2016, an intoxicated Richards went to the home of his uncle, Darrell Underwood, and got into an altercation with him. Underwood asked Richards to leave, and Richards did so but later drove back to Underwood's home, again getting into an altercation with him. At one point, Richards displayed a gun. Hearing and witnessing this commotion, a number of neighbors called 911 to report the disturbance. Some time after midnight, Officer Hutchins and his partner were dispatched to the scene and alerted that Richards was armed with a long gun. Because Richards was armed, the officers decided to park a short distance away from the residence and approach the scene on foot. When they arrived, a neighbor informed Richards and Underwood, who at that point were fighting in Underwood's front yard, that police had arrived.

Precisely what happened next appears to be in dispute, but, construing the facts in the light most favorable to Cole, the district court found as follows. Underwood and Richards continued fighting for approximately ten more seconds before ceasing of their own accord. Underwood then walked toward his front porch while Richards walked to his vehicle, which was parked in Underwood's driveway. From the driver's side of his vehicle, Richards retrieved a long gun—"what all witnesses believed was a rifle" but what turned out to be a pellet gun. By this point,

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

Underwood had made it up the steps of his front porch. Richards then walked around the rear of his vehicle and approached the porch, holding the gun vertically facing either the sky or the ground but "never . . . pointed at Underwood."

Officer Hutchins, who had approached the scene facing the passenger side of Richards's vehicle, saw Richards emerge from behind his vehicle with the gun and head toward Underwood's porch. Richards started up the steps, and Underwood entered his home and slammed the front door. Richards then backed down the steps of the porch and turned away from the door toward his vehicle. Roughly five seconds after Underwood had entered his home and slammed the door, Officer Hutchins fired on Richards five times without warning, striking and killing him. From when he shut his door to the moment shots were fired, Underwood had time to lock the door, walk ten or eleven feet inside his home, and begin speaking to a friend who had been staying at his house.

Cole sued Officer Hutchins on behalf of Richards's estate, alleging among other things that Officer Hutchins violated Richards's Fourth Amendment rights by using excessive force against him. Officer Hutchins moved for summary judgment on the basis that he was entitled to qualified immunity. The district court denied this motion, reasoning that the law was clearly established on October 25, 2016 that an officer "could not use deadly force against a person who posed no immediate threat to cause serious physical injury or death" and that "a jury reasonably could conclude that Richards did not pose an immediate threat of physical injury or death when Hutchins began firing."

Officer Hutchins appeals, arguing that the "undisputed material facts" show he did not violate Richards's Fourth Amendment rights and that the district court defined clearly established law at too high a level of generality. Cole moved to dismiss this interlocutory appeal, arguing we have no appellate jurisdiction over it because Officer Hutchins's defense turns on resolution of disputed facts. We consolidated the motion to dismiss with the merits and now address both.

## II.

We begin with Cole's motion to dismiss. "Our jurisdiction to consider an appeal of an order denying summary judgment based on qualified immunity is limited to the purely legal issue of whether the facts . . . alleged support a claim of violation of clearly established law." *Berry v. Doss*, 900 F.3d 1017, 1021 (8th Cir. 2018) (internal quotation marks omitted). We do not have jurisdiction over an interlocutory appeal from the denial of qualified immunity if "at the heart of the argument is a dispute of fact." *Id.* "Put simply, we lack jurisdiction when a defendant attempts to argue on appeal that he did not do what the . . . plaintiff accuses him of doing." *Heartland Academy Cmty. Church v. Waddle*, 595 F.3d 798, 807 (8th Cir. 2010). Cole contends that Officer Hutchins's appeal is an attempt to argue the facts, meaning we lack jurisdiction.

We disagree. Officer Hutchins argues he is entitled to qualified immunity regardless of the facts found. We have "authority to decide the purely legal issue of whether the facts" as alleged by Cole and found or assumed by the district court constitute "a violation of clearly established law." *See Johnson v. McCarver*, 942 F.3d 405, 409 (8th Cir. 2019); *see also Shannon v. Koehler*, 616 F.3d 855, 861 (8th Cir. 2010) (noting that "there is no serious question that we have jurisdiction to decide whether," accepting a § 1983 claimant's version of the facts, the officer was "entitled to qualified immunity as a matter of law"); *Ngo v. Storlie*, 495 F.3d 597, 601 (8th Cir. 2007) (denying a motion to dismiss an interlocutory appeal from denial of qualified immunity where the officer argued he was entitled to qualified immunity accepting the facts as alleged). We therefore deny Cole's motion to dismiss.

## III.

We now consider whether the district court erred in denying Officer Hutchins qualified immunity, "constrained by the version of the facts that the district court assumed . . . in reaching its decision." *See Johnson*, 942 F.3d at 409. "We review *de novo* a district court's denial of summary judgment on the basis of qualified

immunity." *Robinson v. Hawkins*, 937 F.3d 1128, 1135 (8th Cir. 2019). In determining whether Officer Hutchins is entitled to qualified immunity, we ask whether "(1) the evidence, viewed in the light most favorable to [Cole], establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of violation, such that a reasonable official would have known that his actions were unlawful." *See Rudley v. Little Rock Police Dep't*, 935 F.3d 651, 653 (8th Cir. 2019). We address these points in turn.

A.

A police officer's use of deadly force against a suspect is a "seizure" under the Fourth Amendment. *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019). As such, the use of deadly force is subject to the Fourth Amendment's reasonableness requirement. *Id.* That requirement prohibits the use of excessive force in effectuating a seizure. *Thompson v. Dill*, 930 F.3d 1008, 1013 (8th Cir. 2019). The test for whether force is "excessive" asks "whether the amount of force used was objectively reasonable under the particular circumstances." *Z.J. ex rel. Jones v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672, 681 (8th Cir. 2019). What is "objectively reasonable under the particular circumstances" is evaluated "from the perspective of a reasonable officer on the scene," *id.*, and turns on "those facts known to the officer at the precise moment [he] effectuate[d] the seizure," *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995). Although we consider the "totality of the circumstances," *Wallace v. City of Alexander*, 843 F.3d 763, 768 (8th Cir. 2016), our use-of-deadly-force cases have identified a few considerations particularly relevant here to guide our assessment of objective reasonableness.

To begin, "absent probable cause" for an officer to believe the suspect poses "an immediate threat of death or serious bodily injury" to others, "use of deadly force is not objectively reasonable." *Billingsley v. City of Omaha*, 277 F.3d 990, 993 (8th Cir. 2002) (citing *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)). Generally, an individual's mere possession of a firearm is not enough for an officer to have probable cause to believe that individual poses an immediate threat of death or

-5-

serious bodily injury; the suspect must also point the firearm at another individual or take similar "menacing action." *See Partridge v. City of Benton*, 929 F.3d 562, 566 (8th Cir. 2019); *see also Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005) (finding use of deadly force objectively unreasonable where, *inter alia*, the individual shot held "the gun overhead, pointed upward"); *cf. Rogers v. King*, 885 F.3d 1118, 1121-22 (8th Cir. 2018) (finding use of deadly force objectively reasonable where suspect raised the gun toward another person right before she was shot); *Partlow v. Stadler*, 774 F.3d 497, 502 (8th Cir. 2014) (finding use of deadly force objectively reasonable where suspect "move[d] the shotgun in such a way that the officers believed [he] was aiming the barrel of the shotgun at them").

Also, the requirement that the threat be reasonably perceived as "immediate" means that if the threat has passed, so too has the justification for the use of deadly force. In *Roberts v. City of Omaha*, for instance, we held that an officer was not entitled to qualified immunity where he shot at the suspect "several times, paused, and fired several more times." 723 F.3d 966, 974 (8th Cir. 2013). The issue was not with the initial use of deadly force but rather with the fact that the officer "continued to fire shots" at the suspect "after he was subdued and no longer posed a threat." *Id.* In other words, deadly "force that is reasonable while [the] suspect poses [a] threat is no longer reasonable once [the] threat is no longer present." *Rahn v. Hawkins*, 73 F. App'x 898, 901 (8th Cir. 2003) (per curiam) (citing *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993)); *cf. Wallace*, 843 F.3d at 766, 769 (finding use of deadly force objectively unreasonable where the suspect "had discarded the gun and begun to flee" and "did not move toward his gun or act in a threatening manner").

Additionally, before using deadly force, an officer should, "[w]hen feasible," provide a warning. *Rogers*, 885 F.3d at 1122. When a warning is feasible, the failure to warn "adds to the unreasonableness" of the use of deadly force. *Ngo*, 495 F.3d at 603. That is, while the failure to warn when feasible does not "automatically" render use of deadly force unreasonable, it does "exacerbate the circumstances" and militates against finding use of deadly force objectively reasonable. *Ludwig v. Anderson*, 54 F.3d 465, 474 (8th Cir. 1995).

Applying these considerations, we conclude Officer Hutchins's use of deadly force was not objectively reasonable. The "facts known" to Officer Hutchins "at the precise moment [he] effectuate[d] the seizure," *see Schulz*, 44 F.3d at 648, were that Richards, with his gun pointed either toward the ground or the sky, retreated down Underwood's front steps and had turned away from his front door.[2] In that moment, Officer Hutchins did not have probable cause to believe Richards posed an immediate threat of serious physical harm to Underwood as Richards was not pointing the weapon at Underwood or wielding it in an otherwise menacing fashion. In fact, Richards was visibly retreating from Underwood's home. *See Partridge*, 929 F.3d at 565-67 (concluding that "no reasonable officer" would have viewed individual as "immediate threat" where, although individual was armed and possibly intoxicated, the individual was only pointing a gun at his own head and "began to move the gun away from his head" following an officer's order to do so when he was shot). And any such immediate threat Richards may have posed to Underwood previously was "no longer present," *see Rahn*, 73 F. App'x at 901, when Officer Hutchins chose to shoot him, as upwards of five seconds elapsed between when Richards retreated from Underwood's door and turned toward his vehicle and when Officer Hutchins opened fire.

Furthermore, Officer Hutchins chose to "stand silent before shooting," *cf. Estate of Morgan v. Cook*, 686 F.3d 494, 497-98 (8th Cir. 2012), despite having five to ten seconds from when he saw Richards emerge from behind his vehicle with a gun to when he shot Richards, which was enough time to provide a warning, *see Ngo*, 495 F.3d at 603. His failure to warn "exacerbate[s] the circumstances," *see Ludwig*, 54 F.3d at 474, further confirming that use of deadly force was objectively unreasonable here.

---

[2]Officer Hutchins has not argued he perceived or even could have reasonably perceived a threat to anyone other than Underwood at the time. And he acknowledges he saw Underwood "flee toward his porch," meaning he knew that when Richards backed down the steps and turned away from the porch, he likewise turned away from Underwood.

B.

"For a right to be 'clearly established,' the law must have been sufficiently clear, at the time of the official's conduct, to put every reasonable official on notice that what he was doing violated that right." *Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). This requires "existing precedent" to place the question "beyond debate." *White v. Pauly*, 580 U.S. ---, 137 S. Ct. 548, 551 (2017) (per curiam). "'[E]arlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established,'" but the critical question "is not whether prior cases present facts substantially similar to the present case but whether prior cases would have put a reasonable officer on notice that the use of deadly force in these circumstances would violate" the individual's "right not to be seized by the use of excessive force." *Craighead*, 399 F.3d at 962 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). That said, we look to existing precedent that involves sufficiently "similar facts" and that "'squarely governs' the specific facts at issue" to ensure Officer Hutchins had "notice that [his] specific use of force [was] unlawful." *See Kisela v. Hughes*, 584 U.S. ---, 138 S. Ct. 1148, 1153 (2018) (per curiam).

We conclude the law was clearly established on October 25, 2016 that Officer Hutchins's use of deadly force against Richards was objectively unreasonable in the circumstances of this case. The law was clearly established in two respects relevant here. First, it was clearly established that a person does not pose an immediate threat of serious physical harm to another when, although the person is in possession of a gun, he does not point it at another or wield it in an otherwise menacing fashion. Second, it was clearly established that a few seconds is enough time to determine an immediate threat has passed, extinguishing a preexisting justification for the use of deadly force.

*Nance v. Sammis* shows it was clearly established that an individual does not pose an immediate threat of serious physical harm to others when, although that

person is seemingly in possession of a gun, he does not raise it toward another or otherwise appear "ready to shoot" in the moment. 586 F.3d 604, 611 (8th Cir. 2009). There, officers confronted two individuals they suspected of planning to commit a robbery. *Id.* at 607. The officers thought one of these individuals was armed and ordered him to "[g]et on the ground and drop the gun." *Id.* He did not comply, and one of the officers shot him without additional warning. *Id.* Assuming the individual kept the gun (a toy gun, it turned out) tucked in his pants during the encounter and did not reach for it after being confronted, we concluded that the officer's use of deadly force was excessive. *Id.* at 610-11; *see also Wilson v. City of Des Moines*, 293 F.3d 447, 451-54 (8th Cir. 2002) (affirming denial of qualified immunity because of disputed facts about whether the fleeing suspect, who officers believed to be armed, turned and faced officers in a threatening manner when shot, which was "the most important fact" in the reasonableness analysis).

"[A] robust consensus of cases of persuasive authority," *see Swearingen v. Judd*, 930 F.3d 983, 987 (8th Cir. 2019) (internal quotation marks omitted), confirms that this principle evident in *Nance*—that a person in possession of a firearm is not an immediate threat unless he appears "ready to shoot"—was clearly established before October 25, 2016. In *Cooper v. Sheehan*, for instance, the Fourth Circuit recognized that "an officer does not possess the unfettered authority to shoot" someone "because that person is carrying a weapon" but is only entitled to do so when, "based on a reasonable assessment, the officer or another person is *threatened* with the weapon." 735 F.3d 153, 159 (4th Cir. 2013). The court found the officers' use of deadly force objectively unreasonable and contrary to clearly established law because the individual only held a shotgun "in one hand, with its muzzle pointed at the ground," and made "no sudden moves" or "threats" before the officers shot him. *Id.* at 159-60.

Cases in other jurisdictions bear out this point as well. *See, e.g.*, *Perez v. Suszczynski*, 809 F.3d 1213, 1220 (11th Cir. 2016) ("[T]he mere presence of a gun or other weapon is not enough to warrant the exercise of deadly force and shield an officer from suit. Where the weapon was . . . and what was happening with the

weapon are all inquiries crucial to the reasonableness determination. . . . [T]he ultimate determination depends on the risk presented, evaluating the totality of the circumstances surrounding the weapon."); *George v. Morris*, 736 F.3d 829, 838-39 (9th Cir. 2013) (O'Scannlain, J.) (noting "unsurprising[ly]" that officers' use of deadly force would be objectively unreasonable if it were true that, although the individual held a gun, he had the gun "trained on the ground" and did not make a "furtive movement, harrowing gesture, or serious verbal threat" before being shot); *King v. Taylor*, 694 F.3d 650, 653, 662-63 (6th Cir. 2012) (concluding that use of deadly force against suspect who was holding a gun and had earlier threatened to "kill someone today" was unreasonable, assuming the individual "did not point [the] gun towards the officers just before he was shot"); *see also Brandenburg v. Cureton*, 882 F.2d 211, 213, 215 (6th Cir. 1989) (deciding that an officer's use of deadly force against suspect who had previously threatened to kill the officer and fired warning shots at him could be found unreasonable if it were true that the suspect "was not grasping the trigger" or "aiming his weapon" at the officer when he was shot).

*Ludwig* shows it was clearly established that mere seconds after an immediate threat has passed is sufficient time for an officer to conclude the immediate threat has passed, extinguishing any prior justification for the use of deadly force. 54 F.3d 465. In that case, officers had partially surrounded an individual who faced them while holding a knife, which he "switched . . . from hand to hand" in a threatening manner. *Id.* at 468. He then turned and took flight. *Id.* at 469. "Without firing a warning shot or yelling a warning," an officer shot the man a few seconds later. *Id.* at 469. We concluded the officer's use of deadly force was objectively unreasonable when viewing the facts in the light most favorable to the individual, which meant assuming he turned and ran away from those to whom he ostensibly posed an immediate threat. *Id.* at 473-74. We also found the law clearly established such that the officer "could be expected to know" that shooting the individual seconds after he fled in this manner would violate his constitutional rights. *Id.* at 474.

Once again, decisions from other jurisdictions confirm that this principle was clearly established before October 25, 2016. *See, e.g.*, *Lytle v. Bexar Cty.*, 560 F.3d

404, 413 (5th Cir. 2009) ("[Deadly] force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased."); *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005) ("[Deadly] force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated."); *see also Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999) ("A passing risk . . . is not an ongoing license to kill an otherwise unthreatening suspect."); *Ellis*, 999 F.2d at 247 ("When an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity.").

## IV.

We emphasize the limited nature of today's holding. We do not decide that Officer Hutchins in fact violated Richards's rights. If the factfinder later determines that key facts are not as we must assume them to be—for instance, how Richards held the gun when he was shot, how much time elapsed between when he began to retreat toward his vehicle and when he was shot, whether Richards retreated at all, whether Richards turned away from Underwood's door at all—the legal conclusions that may be drawn at that time may be different than the ones we draw here. But, based on the facts we are bound to assume, we conclude Officer Hutchins violated Richards's clearly established Fourth Amendment right to be free from use of deadly force when he did not pose an immediate threat of serious physical harm to others and any such immediate threat he may have posed previously was no longer present when he was shot. Therefore, we affirm.

---