# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-3637

_____

Joseph George Maser

*Plaintiff - Appellant*

v.

City of Coralville, Iowa; Joshua Van Brocklin, Officer - Individually and in his Official Capacity as Agent and/or Employee of the City of Coralville Police Department; Christopher Kapfer, Officer - Individually and in his Official Capacity as Agent and/or Employee of the City of Coralville Police Department; Deb Summers, Officer - Individually and in his Official Capacity as Agent and/or Employee of the City of Coralville Police Department; Bill Clarahan, Officer - Individually and in his Official Capacity as Agent and/or Employee of the City of Coralville Police Department; John Does, As Yet Unknown Coralville Police Officers

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa

_____

Submitted: January 14, 2025
Filed: June 13, 2025

_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

Officer Joshua Van Brocklin shot Joseph Maser twice in the chest following a stand-off at Maser's house. Maser sued Officer Van Brocklin under 42 U.S.C. § 1983 for violating his Fourth Amendment right against unreasonable seizure. The district court[1] granted qualified immunity for Officer Van Brocklin on the § 1983 excessive force claim, determining Maser's rights were not violated. We affirm.

## I. Background

On a Thursday morning in September 2020, Maser's fiancée called 911 to request a welfare check at Maser's house. She told dispatch that Maser had texted her threatening to commit suicide, had shot a hole through the ceiling of his house that morning, was on a three-day long drinking binge, and had access to several firearms in his garage. Coralville police officers arrived at Maser's address within ten minutes of the 911 call. Maser's home was in a suburban neighborhood with many surrounding houses, and a walking path ran behind it. Officers noted people were likely to be at home during work and school hours because of the COVID-19 pandemic. Responding officers heard at least one gunshot within several minutes after arriving at the scene. The officers called for an ambulance and directed crisis negotiator, Officer Christopher Kapfer, to contact Maser.

Over the next fifty minutes, Officer Kapfer and Maser exchanged various phone calls and text messages. Their conversations included Officer Kapfer asking Maser to exit his residence unarmed, telling Maser the officers were there to help him, and reassuring Maser the officers were not there to take him to jail. During one call, Maser became agitated and told Officer Kapfer that the officers were "fucking stupid" and their protocol was "fucking stupid." Maser also explained that his guns were in his safe, so he was not going to come out armed. Maser ended the call, and Officer Kapfer immediately called him again. This time, Maser agreed he would come outside unarmed, then ended the call.

[1]The Honorable Stephen H. Locher, United States District Judge for the Southern District of Iowa.

The interaction escalated when Officer Kapfer informed Maser his fiancée had arrived at the scene, but that Maser would not be permitted to speak with her. While trying to convince Maser to exit through the back door, Maser refused and texted "[no], cuz I'm gonna come out boys." Officer Kapfer and Maser continued to exchange text messages and calls for the next twenty minutes. Maser again agreed to leave the house unarmed, but insisted he leave through the front door rather than the back door as requested by Officer Kapfer.

While Officer Kapfer continued trying to create an exit plan for Maser, Maser left his house through the front door with his phone in his hand. Officer Van Brocklin, positioned across the street from Maser's home, and Detective Mike Darjania, positioned near the house west of Maser's, ordered Maser to put his hands up. Maser turned west toward Officer Darjania, stuck out his middle finger, said "fuck you," and went back into his house. Officer Kapfer called Maser after he reentered the house. Maser answered and replied, "Really? You fucking idiots. No. Some guy fucking yelling at me about get my hands up." Maser continued to become more upset and made the following threats: "Now it's over."; "But when I got three fuckin' people pointin' fuckin' rifles at me, you asshole. Now I'm gonna fuckin' go."; "I could've walked out of the house and I woulda went into a car. And now I'm unloadin' my safe. So, let's go."; "Fuck off, idiot." Officer Kapfer radioed to the other officers that Maser's hostility was increasing and "he's going to unload his safe and he's ready to go."

While the previous conversation was unfolding, Maser entered his garage, closed the double-width garage door, and partially opened the single-width garage door. Before Maser closed the double-width garage door, Officer Van Brocklin noticed the gun safe in the garage and radioed he saw Maser "walking toward the safe." Maser then closed the single-width door and reopened the double-width door. Maser exited the garage with a rifle in his right hand. Officers shouted at Maser to put his gun down. Officer Bill Clarahan narrated the unfolding events over the police radio: "He's coming out. He's got a long gun, he's got a long gun." Maser looked west toward where officers were positioned and then walked back into the garage.

Four seconds later, Maser again walked out of the garage. Still holding the gun, Maser raised his right arm in an extended position away from his body at about chest level. The video footage shows Officer Clarahan ducked behind his squad car in response to Maser's conduct and then radioed "Oh, long gun!" Officer Van Brocklin testified he perceived Maser was pointing the rifle toward other officers at this moment, even though Maser disputes he pointed the rifle. Officer Van Brocklin then fired two consecutive shots at Maser. Both shots struck Maser in the chest, causing him to fall backwards into the garage. The rifle was found on the garage floor behind Maser.

Maser survived and initially sued Officer Van Brocklin, the City of Coralville, and several other Coralville police officers in state court for claims arising under Iowa state law. Maser later amended his petition to include several § 1983 claims, including an excessive force-based claim against Officer Van Brocklin. Officer Van Brocklin and the other defendants moved for summary judgment based on a qualified immunity defense and removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. Following an Iowa Supreme Court decision in *Burnett v. Smith*, 990 N.W.2d 289, 293, 307 (Iowa 2023), that rendered excessive force claims no longer viable under the Iowa Constitution, the district court sua sponte granted summary judgment on Count 6 against Maser insofar as it raised excessive force claims under the Iowa Constitution. In a separate order, the district court granted summary judgment on the remaining claims against Officer Van Brocklin, concluding Maser's Fourth Amendment rights were not violated. Maser appeals only the district court's grant of summary judgment on the § 1983 excessive force claim against Officer Van Brocklin.

## II. Discussion

We review de novo a grant of summary judgment based on qualified immunity. *De Mian v. City of St. Louis*, 86 F.4th 1179, 1182 (8th Cir. 2023). "Summary judgment is appropriate if the evidence, viewed in the light most favorable to [Maser] and giving [him] the benefit of all reasonable inferences, shows there is no genuine issue of material fact." *Pollreis v. Marzolf*, 66 F.4th 726, 729 (8th Cir. 2023) (quoting *Goffin v. Ashcraft*, 977 F.3d 687, 690–91 (8th Cir. 2020)).

Maser argues there are several genuine disputes of material fact that preclude summary judgment. "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Anderson*, 477 U.S. at 248). Though we are required to make all reasonable inferences in the non-movant's favor while reviewing the alleged facts, we are not required to "accept unreasonable inferences or sheer speculation as fact." *Gilani v. Matthews*, 843 F.3d 342, 349 (8th Cir. 2016) (quoting *Reed v. City of St. Charles*, 561 F.3d 788, 791 (8th Cir. 2009)).

We agree with the district court that the video evidence is reliable and Maser's video expert report did not create a genuine dispute of material fact. Maser produced a report from a video expert who concluded the video evidence was "inconclusive in determining definitively whether or not any forward or upward movement is visible in Mr. Maser's right arm." But close examination of the video footage shows Maser raising the rifle in his right hand forwards and out from his body. Accepting the inference that the video evidence is inconclusive would be unreasonable given what the video footage shows. *See Gilani*, 843 F.3d at 349. The video expert also noted that the videos' lack of creation dates and times in the metadata could indicate the videos were edited. But Maser provided no additional testimony or evidence as to how or what parts of the videos could have been altered. The video expert's report

amounts to mere speculation and does not create a genuine issue of material fact of whether Maser raised the rifle outward from his body. *Id.* At the same time, taking the facts in the light most favorable to Maser, as required, we assume he did not point the rifle at the officers because that fact remains adequately disputed.

Maser's excessive force expert testimony also does not create a genuine dispute of material fact. The excessive force expert testified that "there is no evidence he raised [the rifle] in a threatening manner towards anyone . . . at the critical moment right before Van Brocklin sho[t] Joe." This testimony is a legal conclusion opining on whether Maser's actions justified the use of deadly force against him, which is outside the bounds of proper expert testimony and does not create a genuine dispute of material fact. *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (determining in a qualified immunity claim that expert witnesses may not testify to legal conclusions such as the "reasonableness of [police] conduct in light of Fourth Amendment standards").

Moving on from the fact issues, Maser argues the district court erred by granting Officer Van Brocklin qualified immunity. An officer is entitled to qualified immunity, shielding him from liability unless: "(1) he violated a constitutional right, and (2) that constitutional right was clearly established so that a reasonable officer would know of the right at the time of the alleged violation." *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 982 (8th Cir. 2019).

To establish a constitutional violation, Maser must show the officer used unreasonable force "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "It is reasonable for an officer to use deadly force if he has 'probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others.'" *Rogers v. King*, 885 F.3d 1118, 1121 (8th Cir. 2018) (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012)). Where the suspect possesses a firearm, deadly force is justified when the suspect "point[s] the firearm at another individual or [takes a] similar 'menacing action.'" *Cole ex rel. Est. of Richards v.*

*Hutchins*, 959 F.3d 1127, 1132 (8th Cir. 2020) (quoting *Partridge v. City of Benton*, 929 F.3d 562, 566 (8th Cir. 2019)). Mere possession of a firearm does not justify an officer's use of deadly force, *see id.*, but an "officer may be justified in using a firearm before a subject actually points a weapon at the officer or others" when the officer reasonably believes "there is an imminent threat of serious harm," *Liggins v. Cohen*, 971 F.3d 798, 801 (8th Cir. 2020). Thus, in evaluating the reasonableness of an officer's use of deadly force, the court must consider the totality of the circumstances, including the location and danger of the weapon. *Id.* at 800–02.

The following facts are not genuinely disputed. By the time Officer Van Brocklin arrived at the scene, he knew Maser had been drinking, had access to firearms, and had threatened to commit suicide. While at the scene, he heard one gunshot fired near Maser's house. He knew bystanders were likely to be present in the area. While positioned across the street from Maser's house, Officer Van Brocklin saw Maser exit through his front door, turn toward officers and shout at them. He later saw Maser enter the garage and walk toward the gun safe. Just minutes before Maser exited his garage with a rifle, Officer Van Brocklin learned that Maser's hostility was increasing and that Maser intended to "unload his safe." Further, Officer Van Brocklin knew Maser had repeatedly ignored Officer Kapfer's instructions and witnessed Maser ignore his and other officers' requests to drop his firearm and put his hands in the air. After Maser walked out holding a rifle for the second time, Officer Van Brocklin saw Maser raise the rifle outward from his body.

Based on the totality of the circumstances, Maser threatened officers, refused to comply with officer commands to drop his rifle, and raised his rifle pointing outward from his body after he stepped into the driveway from his garage and advanced in the general direction of officers. *See Mullenix v. Luna*, 577 U.S. 7, 18 (2015) (considering threats of physical violence to officers as part of the totality of circumstances to determine whether the use of deadly force was justified); *Partridge*, 929 F.3d at 566–67 ("Where the weapon was, what type of weapon it was, and what was happening with the weapon are all inquiries crucial to the reasonableness determination." (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1220 (11th Cir.

2016))). In this case, it is immaterial whether Maser actually pointed the rifle at a particular officer because a reasonable officer would perceive how Maser moved the rifle as threatening. *See Liggins*, 971 F.3d at 801. In other words, Maser took a "menacing action." *Cole*, 959 F.3d at 1132 (quoting *Partridge*, 929 F.3d at 566). Further, the circumstances presented a dangerous situation in which Officer Van Brocklin had "reasonable grounds to believe" there was "an imminent threat of serious harm" so that he was justified in using deadly force even if Maser did not actually point his weapon directly at the officer or others. *See Liggins*, 971 F.3d at 801. Considering Maser's noncompliance, the officers' positioning, and Maser's verbal threats toward officers, it was reasonable for Officer Van Brocklin to perceive that Maser raising his rifle created an imminent threat of serious harm to the officers. *Cf. Partlow v. Stadler*, 774 F.3d 497, 502–03 (8th Cir. 2014) (holding an officer's use of deadly force was objectively reasonable when the suspect moved his shotgun in a manner that led officers to believe he was aiming at them after refusing commands to drop the weapon). Therefore, we agree with the district court that Maser's constitutional rights were not violated, and we need not reach the clearly established prong.

Maser raises additional arguments to try to escape this conclusion. None are meritorious. He argues Officer Van Brocklin's use of force was unreasonable because he did not warn Maser before shooting him. While an officer should provide a warning before using deadly force when feasible, a failure to warn does not automatically render the use of deadly force unreasonable. *Cole*, 959 F.3d at 1133. Even if we assume that the officers' pointing of their weapons and their orders for Maser to drop his rifle were not a sufficient warning, *see Rogers*, 885 F.3d at 1122, a warning was not feasible here because Maser exited his garage with the rifle and raised it away from his body in a matter of seconds. Therefore, Officer Van Brocklin's failure to warn Maser before using deadly force does not render his actions unreasonable.

We also reject Maser's argument that, even if Officer Van Brocklin's first gunshot was justified, the second was not. We do not bifurcate the reasonableness

analysis of consecutive gunshots when the shooting was continuous such that the officer did not have adequate time or opportunity to assess whether the threat had passed. *See Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023). Here, Officer Van Brocklin fired both shots within about one second, rendering the shots essentially continuous. This was not enough time for Officer Van Brocklin "to reassess the threat [Maser] presented," so the second gunshot was also reasonable. *See id.*

## III. Conclusion

For these reasons, we affirm the district court's grant of summary judgment.

_____